IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WAHIDAH A. MUHAMMAD,      :
                              :
          Plaintiff,        :
                              :
      v.                 :        CIVIL ACTION NO.
                              :        1:05-CV-0634-JOF
WASHINGTON MUTUAL F.A., et al.,      :
                              :
          Defendants.     :

## OPINION AND ORDER

This matter is before the court on Defendant Washington Mutual's motion for summary judgment [54], and the DeKalb Defendants' motion for summary judgment [61] and motion for leave to file excess pages [62].[1]

I.      **Background**

      A.      **Procedural History**

On March 8, 2005, Plaintiff Wahidah A. Muhammad filed suit against Defendants Washington Mutual F.A. (hereinafter "Defendant WAMU") and Defendants The Board of Commissioners of DeKalb County, Georgia (hereinafter "Defendant DeKalb"), Sheriff of DeKalb County, Thomas Brown (hereinafter "Defendant Brown"), and Officer J.P. Brandenburg (hereinafter "Defendant Brandenburg") (collectively "the DeKalb Defendants").

---

[1] The court GRANTS Defendants' Motion for leave to file excess pages [62].

On November 11, Plaintiff amended her complaint.  In her amended complaint Plaintiff claims that Defendants WAMU, DeKalb, and Brown violated her civil rights.  She also raises claims of false arrest, false imprisonment, and slander  against Defendant WAMU and claims of willful failure to execute duty to investigate and slander against Defendant Brandenberg.  On March 7, 2006, Defendant WAMU filed its motion for summary judgment.  On March 24, the DeKalb Defendants filed their motion for summary judgment.

**B.     Facts**[2]

In 1993 Plaintiff and a friend, Helen Robinson, discussed starting a business together in Georgia.  In furtherance of this venture the two friends tried to find a location for their business.  They settled on a location in Lithonia, Georgia.  The two agreed that as Plaintiff did not have the funding to buy or rent the facility, Ms. Robinson would be the person providing the funding and the one signing the documents.  Plaintiff and Ms. Robinson put in an offer on the location which included a  $2,500  non-refundable deposit.  Ms. Robinson wired that amount to Plaintiff's Washington Mutual checking account in order to make the initial down

---

[2]  The court draws the undisputed facts from the following:   Defendant WAMU's Statement of Undisputed Material Facts; the DeKalb Defendants' Statement of Undisputed Material Facts; Plaintiff's Responses to Defendant WAMU's and the DeKalb Defendants' Statements of Material Facts.   When Plaintiff has disputed a specific fact and pointed to evidence in the record that supports its version of events, the court has viewed all evidence and factual inferences in the light most favorable to Plaintiff, as required on a defendant's motion for summary judgment.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *McCabe v. Sharrett*, 12 F.3d 1558, 1560 (11th Cir. 1994); *Reynolds v. Bridgestone/Firestone, Inc.*, 989 F.2d 465, 469 (11th Cir. 1993).   Accordingly, the following facts are either not disputed or are viewed in the light most favorable to Plaintiff.

AO 72A
(Rev.8/82)

payment on the location.  On September 24, 2003, Plaintiff withdrew $2,400 in cash from the Midtown branch of the bank.  The next day she took this amount to Defendant WAMU's Lithonia branch and received a cashier's check made payable to the owner of the property. Plaintiff then gave the check to her real estate agent.  At some point the owner of the property rejected Plaintiff and Ms. Robinson's offer, and the real estate deal fell through.  Plaintiff's real estate agent returned a cashier's check to Plaintiff, which she assumed was the same as the one which she had possessed before.

On Friday, October 10, 2003, Plaintiff and Ms. Robinson went to Defendant WAMU's Lithonia branch.  While Ms. Robinson sat on a bench near the front door, Plaintiff walked to the counter and was assisted by a bank teller.  Plaintiff indicated that she wished to cash the $2,400 check, but the teller informed her that she would have to deposit the check as it was not made out to her. The teller also told Plaintiff that she was having difficulty scanning the check into the bank's system.   Plaintiff proceeded to sit with Ms. Robinson while the bank employees tried to process the check.  After the teller was not able to enter the check into the system, she brought the check to the bank's manager, Vera Anderson.  The teller reported that she was unable to scan the check or to enter it into the system manually.  Ms. Anderson then tried to scan the check into the system and failed also.  She scanned the check and thought she perceived some irregularities, which she believed were similar to ones that she had seen in a recent fraud workshop.  Ms. Anderson then compared the check to material from the training class.  She also believed that the check was thinner and of lighter stock than WAMU's checks.

3

Ms. Anderson took the check to the employee working the drive-through window who was also unable to scan the check or enter it into the system manually.  At this point either Ms Anderson or the teller called the bank's corporate security department and upon its advice called the police.  Throughout this process, WAMU personnel told Plaintiff that "the computers were down" and that "they were still trying to figure out how to negotiate" the check.

Defendant Brandenberg was the first responder to the bank's call.  Defendant Brandenberg talked to some of the bank's employees and then with Plaintiff.  During this exchange, Defendant Brandenberg waved the check in Plaintiff's face and stated, "this check is bogus."  At some point thereafter, Defendant Brandenberg detained Plaintiff in the back of his police car.  As the crime involved was a possible felony, Defendant Brandenberg had called for a detective to come to the bank.  Detective Hall responded to the call.  When Detective Hall arrived, Plaintiff was already in the back of a police car.  After speaking with bank employees, looking at the check and the training class material, and speaking with the Plaintiff, Detective Hall decided that Plaintiff should be arrested and transported to the DeKalb County Jail.

Once at the jail, Plaintiff was required to remove her head covering and outer covering. Plaintiff was then patted down by a female officer.  This procedure was done in front of other men and women.  Plaintiff was taken to a private room where she was required to change into jail-issued clothing while a female officer was present.  Plaintiff was then placed in a cell,

4

where she waited until she posted bond the next day.  At some point, a magistrate bound the case over to Superior Court.  Later, however, the Assistant District Attorney assigned to the case decided to *nolle pros* the case.

### C.       Contentions

Plaintiff contends that Defendant WAMU's actions subjected it to liability under 42 U.S.C. § 1983.[3]  Furthermore, Plaintiff contends that Defendant WAMU employee's actions toward Plaintiff constituted false arrest, false imprisonment, and slander and violate state law.  Next, Plaintiff contends that Defendant Brandenberg made slanderous comments to Plaintiff the day of her arrest in violation of state law.  Further, she contends that he should be liable under state law for willful failure to execute duty to investigate.  Next, Plaintiff avers that Defendant Brown's actions, in setting up the policies and procedures for the DeKalb County Jail, subjected him to liability, in his personal capacity, under 42 U.S.C. § 1983.  Finally, Plaintiff argues that Defendant DeKalb should be liable pursuant to 42 U.S.C. § 1983 for the actions of Defendant Brandenberg and Defendant Brown under a *respondeat superior* theory.

Defendant WAMU contends that, as it is a private party, Plaintiff must show that it conspired with government actors to be liable under 42 U.S.C. § 1983.  Defendant WAMU

---

[3]     Although Plaintiff states that Defendant Brandenberg conspired to deny Plaintiff her civil rights in her allegations raised in Count I of her complaint which addresses liability under section 1983, Plaintiff does not name Defendant Brandenberg as a Defendant under Count I, nor does she seek damages against Defendant Brandenberg based on Count I.  Therefore, the court finds that Plaintiff has failed to raise a § 1983 claim against Defendant Brandenberg.

5

further states that Plaintiff has not shown the existence of any such conspiracy. The DeKalb Defendants argue that Defendant Brandenberg is not subject to liability on Plaintiff's claims as he did not make the decision to arrest Plaintiff. Defendants argue that Defendant Brandenberg merely detained Plaintiff and that it was Detective Hall who made the decision to arrest Plaintiff. Defendant Brown argues that he is not subject to liability in his personal capacity under 42 U.S.C. § 1983 because his actions did not violate a constitutional right and even if they did, he would be entitled to qualified immunity. Finally, Defendant DeKalb argues that it is not a party capable of being sued. Further, Defendant DeKalb contends that even if it were capable of being sued, Plaintiff may not bring a 42 U.S.C. § 1983 action against it based upon the theory of *respondeat superior*.

## II.    Discussion

### A.    Section 1983

Plaintiff's complaint alleges that Defendant WAMU, Defendant DeKalb, and Defendant Brown all violated Plaintiff's civil rights under 42 U.S.C. § 1983.   In the complaint Plaintiff contends that Defendants WAMU, Brandenberg, and Brown "conspired to deny Plaintiff her civil rights by causing her arrest and incarceration when there was no probable cause to do so." Cmplt. ¶ 18.   However, in her briefing Plaintiff contends that conspiracy is not a vital element of her claim.

### 1.    Defendant WAMU

In *Rowe v. City of Ft. Lauderdale*, the Eleventh Circuit Court of Appeals found that "section 1983 does not afford a remedy against a private person unless that person is shown to have conspired with one or more state actors."   279 F.3d 1271, 1285 (11th Cir. 2002) (citing *NAACP v. Hunt*, 891 F.2d 1555, 1563 (11th Cir. 1990)).   "To establish a *prima facie* case of § 1983 conspiracy, a plaintiff must show, among other things, that the defendants reached an understanding to violate his rights."   *Id.* at 1283 (quotations and citation omitted). "For a conspiracy claim to survive a motion for summary judgment, a mere scintilla of evidence will not suffice; there must be enough of a showing that the jury could reasonably find for that party."   *Id.* at 1284 (quotations and citation omitted).

Here, Plaintiff has produced no evidence that Defendant WAMU conspired with the other Defendants to deny Plaintiff her civil rights.   Therefore, the court finds that Plaintiff has

7

failed to make a viable section 1983 claim against Defendant WAMU.   As such, the court GRANTS Defendant WAMU's motion for summary judgment with regard to Plaintiff's section 1983 claim.

### 2.      Defendant Brown

#### a.      Constitutional Violation

Plaintiff claims that Defendant Brown "may be personally liable for his failure to implement policies necessary to protect the Fourth Amendment rights of persons processed into his jail."   The only action that Plaintiff alleges violated her rights was the requirement that she "remove her head covering and outer clothing in full view of male prisoners and staff." Plaintiff seems to be raising a claim of supervisory liability against Defendant Brown.

Supervisory liability is imposed either "when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation."   *Miller v. King*, 384 F.3d 1248, 1261 (11th Cir. 2004) (internal marks omitted).

The Fourth Amendment protects "[t]he right of the people to be secure . . . against unreasonable searches and seizures."   U.S. Const. Amend. IV.   "[U]nreasonable contemplates more than the unnecessary strike of a nightstick, sting of a bullet, [or] thud of a boot."   *Hicks v. Moore*, 422 F.3d 1246, 1253 (11th Cir. 2005) (internal citations and quotations omitted). While "harassing and abusive behavior by an officer towards a detainee during a seizure can, in some cases, rise to the level of unreasonable," the *Hicks* court stressed that "not every

8

intrusion, touching, discomfort or embarrassment during an arrest is actionable as a violation of the Fourth Amendment." *Id.* at 1253-54. "What is reasonable, of course, depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *Id.* at 1254 (citing *Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602 (1989)). "The Fourth Amendment reasonableness inquiry is a balancing test that weighs the need for the search, including its likely effectiveness in averting potential harm to the public, against the degree and nature of the intrusion into a citizen's privacy interests." *U.S. v. Prevo*, 435 F.3d 1343, 1345 (11th Cir. 2006). Finally, "searches need not be delicately conducted in the least intrusive manner," so long as they are conducted in a reasonable manner. *Evans v. Stephens*, 407 F.3d 1272 (11th Cir. 2005).

It is well settled that institutional security is a primary penological interest, *Bell v. Wolfish*, 441 U.S. 520, 547-548 (1979), and prison administrators are granted wide discretion in establishing rules and regulations to maximize the security interests of their institution. *Procunier v. Martinez*, 416 U.S. 396, 404-05 (1974). Further, the Supreme Court has made clear that, in the absence of substantial evidence that prison officials have exaggerated their response to particular internal security concerns, courts should normally defer to their expert judgment. *Pell v. Procunier*, 417 U.S. 817, 827 (1974).

The Eleventh Circuit in *Prevo* went to great lengths to emphasize the need if not duty on the part of government actors to search not only inmates but even visitors to prisons. *Id.* at 1346. ("Prison authorities have both the right and the duty by all reasonable means to see

to it that visitors are not smuggling weapons or other objects which could be used in an effort to escape or to harm other prisoners.")

Here, considering the facts and circumstances, while the removal of Plaintiff's head covering and outer clothing infringed on her privacy interests and was not done in the least intrusive manner, the court finds that because of the overwhelming interest in keeping jails and prisons free of contraband, such a search was warranted and reasonable under the Fourth Amendment.  As the court finds that the search in question does not violate Plaintiff's Fourth Amendment rights, Defendant Brown cannot be held liable under supervisory liability for failing to implement policies which addressed searches of Muslim women prior to incarceration.

<b>b.      Qualified Immunity</b>

Even were this court to have found that Defendant Brown violated Plaintiff's Fourth Amendment rights, Defendant Brown is entitled to qualified immunity.  In *Evans v. Stephens*, 407 F.3d 1272 (11th Cir. 2005) (en banc), the Eleventh Circuit reviewed the standard for qualified immunity.  "Qualified immunity is an affirmative defense available to public officers acting within the scope of their discretionary authority."  *Id.* at 1282.  "Once the defendants establish that they were acting within their discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate." *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1303 (11th Cir. 2006) (citing *Lumley v. City of Dade City,* 327 F.3d 1186, 1194 (11th Cir. 2003)).

10

The Supreme Court has established a two-part test for determining if an official is entitled to qualified immunity. *Id.* First, as a threshold inquiry the court determines whether the facts presented, taken in a light most favorable to the non-moving party, establish a constitutional violation. *Id.* If so, the court must determine whether that right was "clearly established," at the time of the defendant's actions. *Id.*

The applicable law is clearly established if the preexisting law dictates, that is, truly compels, the conclusion for all reasonable, similarly situated public officials that what Defendant was doing violated Plaintiffs' federal rights in the circumstances. *Evans*, 407 F.3d at 1282. However "[i]n rare circumstances, a right may be so clear from the text of the Constitution or federal statute that no prior decision is necessary to give clear notice of it to an official." *Id.* (quotations and citations omitted). No prior decision is necessary only in the rare circumstances where "the officer's conduct" went "'well beyond the hazy border that sometimes separates lawful conduct from unlawful conduct,' such that every objectively reasonable officer would have known that the conduct was unlawful." *Gray*, 458 F.3d at 1307 (citing *Evans*, 407 F.3d at 1283).

In the case before this court, Plaintiff concedes that Defendant Brown is a state actor and entitled to Eleventh Amendment protection from suit in his official capacity. Pltf. Res. to DeKalb Def.'s Mot for Summary Judgment at 7. Plaintiff indicates that she seeks redress against Defendant Brown for action taken in his personal capacity. Here, the parties dispute

11

whether the rights Defendants are alleged to have violated were "clearly established" at the time the purported violations took place.

Plaintiff does not cite and the court cannot find any similar case law which would have put Defendant Brown on notice that his failure to implement policies which addressed searches of Muslim women prior to incarceration violated Plaintiff's clearly-established rights. Therefore, Defendant would lose his qualified immunity only if his conduct went well beyond the hazy border that separates legal from unlawful conduct. The court does not find that the prison's policies requiring females to remove head coverings and outer garments to be so egregious as to be a clear constitutional violation. Therefore, even were the court to find that Defendant Brown's actions violated Plaintiff's Fourth Amendment rights, he would be entitled to qualified immunity.

### 3.    Defendant DeKalb[4]

Plaintiff contends that Defendant DeKalb is liable for Defendant Brandenberg's and Defendant Brown's actions under a theory of *respondeat superior*. The United States Supreme Court in *Monell v. Department of Soc. Serv.'s of City of New York*, 436 U.S. 658, 691 (1978), explicitly stated, "a municipality cannot be held liable under § 1983 on a

---

[4] Defendant DeKalb states that it (the DeKalb County Board of Commissioners) is not an entity capable of being sued. Defendant DeKalb informed Plaintiff of this deficiency in the consolidated joint preliminary report and discovery plan on September 16, 2005. While the court finds some merit in Defendant's argument, the court will assume without deciding that it is subject to suit for the purposes of addressing the viability of Plaintiff's section 1983 claim based upon *respondeat superior*.

12

*respondeat superior* theory.   It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable." *City of Canton v. Harris,* 489 U.S. 378, 385 (1989).

Here, Plaintiff has shown no custom or policy which subjects Defendant DeKalb to liability and relies solely on a theory of *respondeat superior*.   *Monell* and *Canton* dictate Plaintiff cannot recover against Defendant DeKalb on such a theory.   Therefore, the court GRANTS Defendant DeKalb's motion for summary judgment with regard to Plaintiff's section 1983 claim against Defendant DeKalb.

13

**B.      State Law Claims**

A district court has the discretion to dismiss state law claims when it has dismissed "all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).  "[I]f the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of state claims." *Mergens v. Dreyfoos,* 166 F.3d 1114, 1119 (11th Cir. 1999) (citations omitted).   However, if the court exercises this discretion, a plaintiff's state law claims should be dismissed without prejudice so that they later may be brought in state court.  *Crosby v. Paulk*, 187 F.3d 1339, 1352 (11th Cir. 1999).

As the court has already found that Plaintiff has failed to state viable section 1983 causes of action against Defendants WAMU, DeKalb, and Brown  , the court opts to dismiss the remaining state law claims the disposition of which would be better suited for state court. Accordingly, the court DENIES Defendants' motion for summary judgment on the state law claims.   Instead, this court exercises its discretion and DISMISSES WITHOUT PREJUDICE these state law claims.

**III.    Conclusion**

The court GRANTS-IN-PART and DENIES-IN-PART Defendants' motions for summary judgment [54, 61].   The court GRANTS the motions with respect to Plaintiff's section 1983 claims and DENIES these motions with respect to the state law claims.   The court exercises its discretion and DISMISSES WITHOUT PREJUDICE these state law claims. The court GRANTS Defendants' motion for leave to file excess pages [62].

14

**IT IS SO ORDERED** this 27th day of March 2007.


_____s/ J. Owen Forrester_____
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

15